**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3176-24

MAUREEN DEGEORGE,

    Plaintiff-Appellant,

v.

NANCY FERRARA, KELLY
RAGGIO and GIOVANNI
RANDAZZO,

    Defendants-Respondents.

_____

Submitted May 28, 2026 – Decided July 28, 2026

Before Judges Currier and Smith.

On appeal from the Superior Court of New Jersey, Law Division, Monmouth County, Docket No. L-2190-23.

Maureen DeGeorge, self-represented appellant.

Margolis Edelstein, attorneys for respondents (Martin J. McAndrew, on the brief).

PER CURIAM

In this matter, plaintiff alleged defendant Nancy Ferrara wrote a defamatory email which caused her extreme emotional distress. The trial court found the email was protected under the litigation privilege and was not defamatory and granted defendants summary judgment. We affirm.

I.

Plaintiff and Bruce DeGeorge[1] divorced in 2018. Plaintiff remained in the marital home until August 2019. According to Bruce, the house was in a state of "total disarray" by the time plaintiff left the premises and he moved in "to just clean it up to sell it."

In March 2021, Bruce and plaintiff hired real estate agent Ferrara from Re/Max Central to sell their marital home.[2] The property was first listed on the market on April 10, 2021, with a "well attended" open house that same day. However, that night, plaintiff and Bruce asked Ferrara to cancel all the showings scheduled for the next day. Although Ferrara advised against the decision, she nonetheless complied with the request. On April 14, plaintiff and Bruce received and declined an offer from an open house attendee.

---

[1] For the reader's ease, we refer to Bruce DeGeorge as "Bruce" since he shares a surname with plaintiff.

[2] Defendant Kelly Raggio was the broker of record for Re/Max Central. Defendant Giovanni Randazzo was Ferrara's team leader.

A-3176-24

On April 22, Ferrara informed plaintiff and Bruce that she intended to conduct a FaceTime showing of their home to potential out-of-state buyers prior to an open house scheduled for that day. Bruce responded and advised he agreed with Ferrara's previous request to lower the asking price before the open house. On April 23, plaintiff declined to lower the price.

Also on April 23, plaintiff applied for and received a Temporary Restraining Order (TRO) against Bruce, who subsequently received a TRO against plaintiff. According to Ferrara, "[t]he difficulty in communicating to both Bruce and [plaintiff] [was] challenging due to blocked messaging and guidelines not to speak to each other." The circumstances caused Ferrara to cancel showings with potential buyers. As a result, on April 25, Ferrara and Bruce discussed taking the house off the market. Ferrara sent forms to Bruce and plaintiff for their signatures to temporarily remove the home from the market, until the house could "be shown without constraints." Bruce signed the form; plaintiff did not.

On April 26, at Bruce's request, Ferrara sent Bruce and his attorney an email (the Ferrara email) setting forth a chronological timeline of the events related to the sale of the home from March 31 to April 23, 2021. Bruce's counsel intended to use the email at the final restraining order (FRO) trial regarding the

3

listing activities concerning the house. Plaintiff confronted Ferrara regarding the email but still refused to take the house off the market.

On June 30, 2021, the Family Part judge held a trial regarding the dueling TROs. In dismissing plaintiff's TRO, the judge found plaintiff to be "unbelievable" and "not credible." There was no reference to the Ferrara email in the court's oral decision. The court also dismissed Bruce's TRO.[3]

In April 2023, plaintiff filed a civil complaint against defendants, alleging Ferrara defamed her by "submitting lies about [her] to [Bruce's] attorney to use in court" and these actions caused her "[e]xtreme emotional distress, anxiety and fear."[4] She further stated the "[d]efamation of character result[ed] in a judgment against [her] in Domestic Violence Court."

Defendants moved for summary judgment. In a written decision, the court found plaintiff had not supported her defamation claim as the Ferrara email was protected under the litigation privilege; if it was not privileged, its content was true, and plaintiff could not establish she sustained any damages resulting from

---

[3] Plaintiff only provided the transcript of the FRO hearing on June 30, 2021. That appears to be the second day of trial. Therefore, our scope of review of the evidence is restricted only to the June 30, 2021 hearing.

[4] Plaintiff also alleged defendants' actions caused her children "extreme emotional distress."

A-3176-24

the email.  The court granted defendants' motion for summary judgment on April 28, 2025.

## II.

On appeal, plaintiff contends the court erred in granting summary judgment as she established a defamation cause of action and the litigation privilege does not apply to Ferrara's email.

Our review of the trial court's grant or denial of a motion for summary judgment is de novo, applying the same standard used by the trial court. Samolyk v. Berthe, 251 N.J. 73, 78 (2022).  We consider "whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party."  Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995).

## A.

We begin with considering whether the email was protected by the litigation privilege, and therefore, could not be the basis for a defamation claim. After reviewing the applicable law, the motion court found: "[T]he email itself was prepared to be used in the FRO trial as the parties had been directed to sell the property by the [c]ourt."  Because there was a "nexus between the

A-3176-24

communication made by . . . Ferrara, at the request of [Bruce] and his counsel, and the judicial proceedings[,] . . . Ferrara's email [was] within the ambit of the litigation privilege and [was] protected."

The litigation privilege grants "absolute privilege to statements or communications made by attorneys in the course of judicial and quasi-judicial proceedings." Baglini v. Lauletta, 338 N.J. Super. 282, 297 (App. Div. 2001). In Baglini, we stated that for a communication to be privileged it must: "(1) be made in judicial or quasi-judicial proceedings; (2) be made by litigants or other participants authorized by law; (3) be made to achieve the objects of the litigation; and (4) have some connection or logical relation to the action." Ibid. The doctrine applies to all statements made at trial and/or communications made in connection with the judicial proceeding. Ibid.

The first element is likely satisfied. At his attorney's direction, Bruce asked Ferrara to prepare a timeline of events related to the attempted sale of the marital home. This was anticipated to be evidence in the FRO trial. Plaintiff's behavior contributing to the difficulty in selling the home was discussed by Bruce in the FRO hearing.

On appeal, plaintiff only submitted the second day of testimony for the FRO hearing, which does not include any discussion of the Ferrara email.

A-3176-24

However, the judge who considered the summary judgment motion referred to the email and found it was not the basis of the Family Part judge's decision denying both FROs. In addition, defendants state in their answering appellate briefs that there was testimony regarding the email. In light of this extrinsic information, we presume the email was discussed during the first day of the FRO trial.

Because it is understood that the "privilege extends to 'preliminary conversations and interviews between a prospective witness and an attorney if they are in some way related to or connected with a pending or contemplated action,'" Hawkins v. Harris, 141 N.J. 207, 216 (1995) (quoting Ascherman v. Natanson, 23 Cal. App. 3d 861, 865 (Cal. Ct. App. 1972)), Ferrara's email satisfied the first element.

As to element two, the Supreme Court has reasoned that "a participant authorized by law" is typically a party that has an "undoubted interest in the outcome of the proceedings." Hawkins, 141 N.J. at 219. "The immunity that attends judicial proceedings protects both counsel and other representatives who are employed to assist a party in the course of litigation. The privilege protects an attorney's agents and employees in what they do at the attorney's request." Ibid. (citations and internal quotations omitted). The Court has also stated that

the privilege "affords litigants and witnesses 'the utmost freedom of access to the courts without fear of being harassed subsequently by derivative tort actions.'" Id. at 216 (quoting Silberg v. Anderson, 786 P.2d 365, 369 (1990)). Ferrara was a potential witness at the trial and her email was requested by Bruce's counsel as possible evidence to support his testimony. Element two is satisfied.

For the reasons previously stated, the email similarly satisfies element three of the litigation doctrine as it was prepared in anticipation of being proffered as evidence in the FRO trial.

Addressing element four, there was a logical relation between the Ferrara email and the FRO proceeding. Witnesses at the trial referenced a court order requiring plaintiff and Bruce to sell the house. Bruce's attorney argued to the Family Part judge that plaintiff applied for a TRO to give her sole possession of the house and to stall compliance with the court order to sell the home.

The email is relevant to the FRO trial to substantiate Bruce's claim that plaintiff had continuously thwarted the sale of the home despite the court order. In addition, the continuing disputes regarding the sale of the house contributed to each party's decision to apply for a restraining order. As the trial court found, there was a "nexus between the communication made by . . . Ferrara, at the

A-3176-24

request of [Bruce] and his counsel, and the judicial proceedings." We are satisfied the court did not err in its determination that the email was privileged.

B.

Notwithstanding that conclusion, we also agree with the trial court's finding that the content of Ferrara's email is not defamatory. The court stated the statements in the email were "simply a timeline of what happened from . . . Ferrara's perspective with regard to showing the home." In addition, the court noted the email was "not the basis of the decision denying both FROs." Rather, the Family Part judge found plaintiff to not be credible and dismissed her testimony as "unbelievable."

To establish a defamation claim, a plaintiff must establish that: "(1) the defendant made a false and defamatory statement; (2) the statement was communicated to another person (and not privileged); and (3) the defendant acted with fault by either a negligence or actual malice standard." Bank v. Lee, 481 N.J. Super. 412, 430-31 (App. Div. 2025) (citations and internal quotations omitted). "A defamatory statement, generally, is one that subjects an individual to contempt or ridicule, one that harms a person's reputation by lowering the community's estimation of [her] or by deterring others from wanting to associate or deal with [her]." Id. at 430 (quoting Petro-Lubricant Testing Lab'ys, Inc. v.

Adelman, 233 N.J. 236, 253 (2018)).  In assessing whether a statement has defamatory meaning, courts use a context and content dependent test regarding the statement's plain meaning as understood by a reasonable person.  Id. at 431.  Crucially, "true statements are 'not actionable as defamation.'"  Ibid. (quoting Hart v. City of Jersey City, 308 N.J. Super. 487, 492 (App. Div. 1998)); see also G.D. v. Kenny, 205 N.J. 275, 293-94 (2011) (finding that truth is a defense even if defendant's statement contains minor inaccuracies, so long as the statement is substantially true).

Whether the meaning of a statement is defamatory is a question of law for the court.  Ibid.  If a statement is not defamatory, summary judgment is appropriate.  Ibid.

As stated, the email simply listed in chronological order events related to the attempted sale of the marital property.  Ferrara indicated the difficulty she experienced communicating with plaintiff and Bruce due to the restraining orders.  Ferrara listed relevant dates, accompanied by brief comments, describing the events she personally observed and encountered.  As the trial court found, there are no disparaging comments that could be understood as being "defamatory" or subjecting plaintiff to "contempt or ridicule."  Lee, 481 N.J. Super. at 430.

As stated, we cannot know with certainty if the email was presented as evidence, whether through testimony or as an exhibit because we were not provided the transcript from the first day of the hearing. However, we do know the Ferrara email was not a factor in the Family Part judge's decision. Instead, in considering plaintiff's testimony, the judge made her credibility assessments, finding plaintiff to be "unbelievable," "melodramatic," "manipulative," and not "a victim of domestic violence." For those reasons, the court dismissed the TRO. Moreover, the factual evidence supports the veracity of the information in the email.

The trial court did not err in granting defendants' motion for summary judgment as plaintiff failed to establish a defamation cause of action. In light of our conclusion we need not address plaintiff's remaining arguments. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

11    A-3176-24